Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Email: fhedin@hedinllp.com

*Attorney for Plaintiffs Richard Medina, Jamie Edson, and the Putative Class*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

RICHARD MEDINA and JAMIE EDSON, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

L. CUSTEN REALTY, INC.,

Defendant.

Civil Action No. ___________

**COMPLAINT**

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

On behalf of themselves and all others similarly situated, Plaintiffs Richard Medina and Jamie Edson complain and allege as follows based on personal knowledge as to themselves, the investigation of their counsel, and information and belief as to all other matters, and demands trial by jury. Plaintiffs believe that substantial evidentiary support will exist for the allegations in this complaint, after a reasonable opportunity for discovery.

## NATURE OF THE CASE

1. This case is about upholding the rights of tens of thousands of Americans who have never interacted with Defendant L. Custen Realty, Inc. but who have nonetheless had their names, identities, and other personally identifying information misappropriated and used by Defendant to advertise and promote its own products and services.

2. Defendant has built a lucrative business by misappropriating the names and identities of hundreds of thousands of real estate agents across the United States. Defendant has created, published, and disseminated hundreds of thousands of profile pages, each one of which centers around the personal identity of one real estate agent. On each profile page, Defendant uses the name, identity, and personally identifying information of that one real estate agent to advertise its own products and services.

3. To maximize the revenue it generates from its products and services, Defendant misappropriates the name and identity of nearly every real estate agent whose personal information it has amassed in its database to advertise its own products and services—often without asking, let alone obtaining consent from, any of those individuals.

4. The California Right of Publicity Law ("CRPL") and California common law right of publicity clearly prohibit what Defendant has done.

5. Accordingly, Plaintiffs bring this action, individually and on behalf of the proposed Class defined below, to redress and put a stop to Defendant's violations of the right of publicity.

## PARTIES

6. Defendant L. Custen Realty, Inc. ("Defendant") is a Delaware corporation that maintains its headquarters in Houston, Texas. Defendant owns and operates the website Realty.com (the "Website"), where it advertises and sells products and services to persons throughout the United States, including in the state of California. Defendant intentionally misappropriates the names identities of California residents, targets its advertising on the Website (which misappropriates those names and identities) towards California residents, and sells products and services to California residents through the Website. Defendant is registered to do

business in the state of California and may be served through its registered agent, 1505 Corporation at 2710 Gateway Oaks Drive, Sacramento, California.

7. Plaintiff Richard Medina is a natural person and is a resident and citizen of La Quinta, California.

8. Plaintiff Jamie Edson is a natural person and is a resident and citizen of Colfax, California.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (i) at least one member of the putative class is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000 with respect to the putative class, exclusive of interest and costs, and (iii) there are at least 100 members of the putative class.

10. Personal jurisdiction and venue are proper because Plaintiff Edson is a resident of Colfax, California, which is within this judicial District, and her injuries from Defendant's conduct as described were incurred within this judicial District.

11. Personal jurisdiction is further proper because Defendant intentionally misappropriates the names identities of California residents, causes injuries to accrue in California, targets its advertising on the Website (which misappropriates those names and identities) towards California residents, and sells products and

services to California residents through the Website. Defendant knowingly and intentionally misappropriates the names and identities of Plaintiffs and the Class members, knows that Plaintiffs and the Class members reside in California, and knows that the resulting harm will be suffered in California. Further, Defendant expressly aims its conduct at California by hosting listings for properties in California on its Website and connecting potential home buyers who are located in California to real estate agents who are located in California, for the purpose of facilitating the transactions of properties located in California.

## APPLICABLE STATUTORY AND COMMON LAW

### I. California Right of Publicity Law

12. Recognizing the need to protect its citizens' rights of publicity, the California legislature enacted the CRPL to establish a right to control the use of one's name and likeness, among other identifying attributes, in commercial advertising.

13. The CRPL prohibits companies like Defendant from, *inter alia*, using an individual's name or likeness, in any manner, to advertise or sell, or solicit purchases of, products or services. Specifically, Section (a) of the CRPL states, in pertinent part:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such

> person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a).

14. The CRPL provides for, *inter alia*, statutory damages of $750.00 per violation, as well as recovery of any profits attributable to the unauthorized use of the person's name or likeness. *See id.* § 3344(a).

15. As explained below, Defendant disregarded its legal responsibilities to Plaintiffs and (at least) tens of thousands of other individuals by using their names to advertise and promote its services—in direct violation of the CRPL.

## II. California's Common Law Right of Publicity

16. California also protects the right of publicity through a common law cause of action.

17. Under California's common law, a claim for violation of publicity rights has four elements: (1) the defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.

18. California's common law right of publicity protects not only against the unauthorized commercial use of an individual's name, voice, signature, photograph, and likeness, but also protects their identity more broadly.

19. California's common law right of publicity may be enforced through an action for damages and/or injunctive relief.

20. As explained below, Defendant disregarded its legal responsibilities to Plaintiffs and many other real estate agents by using their names, identities, and other personally identifying information to advertise and promote its services, without any of their consent—in direct violation of the protections afforded by California's common law right of publicity.

## FACTUAL BACKGROUND

21. As the operator of a real estate network with "millions of listings for homes, properties, townhomes, and condos," Defendant has built a lucrative business centered around selling real estate leads and advertising services to real estate agents who are members of its online platform.[1]

22. Defendant has compiled a vast database of the names and personally identifying information of nearly all real estate agents in the United States.

23. Defendant uses the names, identities, and personal details of the real estate agents in its database (including those located in California) to advertise its own products and services—even when those individuals have never provided Defendant consent to do so.

---

[1] Realty.com, "Advertise on Realty.com", available at https://www.realty.com/advertise.

24. Defendant does this by publishing and disseminating hundreds of thousands of "profile" pages on the Website. Each profile page prominently features the name, identity, and personally identifying details of one real estate agent and uses those protected personal attributes to advertise Defendant's own products and services.

25. Defendant disseminates the profile pages in California, directs them towards individuals located in California, and intentionally targets the advertising on those pages towards individuals located in California.

## I. Defendant's Products and Services

26. Defendant makes money by selling real estate leads to real estate agents who pay for Defendant's lead generation and marketing services.

27. Defendant operates a classic "two-sided" business model through the Website.[2] Defendant uses the Website to both (1) collect real estate leads (e.g., the

[2] *See, e.g.*, Sunil Gupta and Carl F. Mela, *Harvard Business Review,* "What Is a Free Customer Worth?" (Nov. 2008) ("Customers who pay little or nothing and are subsidized by another set of customers are essential to a vast array of businesses . . . According to one estimate, this business model accounts for a majority of the revenues of 60 of the world's 100 largest companies . . . The rationale for this approach, of course, is that by charging one set of customers little or nothing, the business will attract the critical mass of them required to draw in large numbers of another set of customers, and the income generated by the latter will handsomely exceed the cost of acquiring and serving the former.").

contact information of people who are looking to buy or sell a home), and (2) to sell those leads to the real estate agents who are it's paying customers.

28. Defendant could not operate this business without generating a substantial number of leads to sell to its paying customers.

29. To generate leads through the Website, Defendant offers potential home buyers and sellers a variety of products and services on the first "side" of its "two-sided" business model.

30. For example, Defendant operates a service which includes listings of properties which are for sale across the United States, including listings for thousands upon thousands of homes for sale in California.

31. When an internet user clicks on a listing for a home located in California on Defendant's Website, he or she is presented with an advertisement stating "Your Local Brokerage" and listing the name and photograph of a realtor, as shown below[3]:

[3] Realty.com, "Riverside, CA – Home for Sale" https://www.realty.com/homedetails/9721-indiana-riverside-ca-92503.




32. The "Your Local Brokerage" advertisements contain a button which reads "Request a tour." Upon clicking that button, internet users are given the opportunity to schedule a tour of the home they are interested in seeing—including for many thousands upon thousands of homes located in California. The following screenshot is an example showing how an internet user can schedule a tour of a home located in California on Defendant's Website[4]:

[4] *Id.*


Request a tour
Thomas O'Leary
Realty.com
Tomorrow
Sat, Sep 12
Sun, Sep 13
9:00 am
Your name
Email
Phone
By clicking "Request a tour" you are providing your electronic signature and express written consent to Realty.com, including their licensed real estate professionals and parties acting on their behalf, to receive marketing communications about real estate brokerage
Request a tour

33. As shown above, clicking "Request a tour" provides Defendant the internet user's consent to receive marketing communications from Realty.com and its "licensed real estate professionals and parties acting on their behalf."

34. When an internet user clicks the "Request a tour" button, a "lead" is generated which Defendant providers to its paying customers, including realtors located in California. After receiving these "leads" from Defendant, those California-based realtors call the internet users who submitted the "leads" and offer to show them properties listed for sale in California.

35. Creating an account on Defendant's Website permits internet users to save searches, save certain properties, and submit additional inquiries. When potential home buyers create an account on Defendant's Website, they must also consent to receive marketing communications from Realty.com and its "licensed real estate professionals and parties acting on their behalf," as shown below[5]:

[5] Realty.com, "Realty.com", available at: https://www.realty.com/.


Sign in to Realty.com
One account for your saved homes, saved searches, and inquiries — built for home buyers and owners.
First name
Last name
Email address
Phone number
Your phone number is also your password.
By clicking "Create account" you are providing your electronic signature and express written consent to Realty.com, including their licensed real estate professionals and parties acting on their behalf, to receive marketing communications about real estate brokerage services about properties you may wish to buy or sell, at the
Create account
Already have an account? Sign in
Are you an agent? Agent sign-in lives on our advertise

36. Registered users of Defendant's Website who are potential home buyers are immensely valuable to Defendant because they constitute the audience to which paying users on the other "side" of its platform can advertise, and they generate "leads" that Defendant can sell to its paying customers through activities like requesting to tour homes which are for sale.

37. Defendant also collects "leads" of potential home sellers through the Website. For example, the Website provides a "Sell Your Home" feature. Internet users can submit their property's address into this feature, and then enter their contact information, and then receive a free home valuation, and be connected with a seller's agent by Defendant. As with the real estate membership service, the potential seller needs to consent to receiving marketing communications from Realty.com and its associated "licensed real estate professionals and parties acting on their behalf." Once a potential seller submits his or her contact information through the "Sell Your Home" feature, Defendant routes that lead to a paying subscriber to its marketing and lead generation services.[6]

38. Defendant also collects real estate leads through products and services advertised on the profile pages of real estate agents that it publishes by the hundreds of thousands—as more fully detailed in the following section.

---

[6] Realty.com, "What's My Home Worth? Sell Your Home", available at: https://www.realty.com/sell#home-value.

39. On the second "side" of its "two-sided" business model, Defendant sells access to real estate "leads" to real estate agents. Defendant uses at least two pricing models to do this: subscriptions and *a la carte* purchases.

40. For example, Defendant sells access to leads through subscription plans. As just one example, it sells a "Realty Pro" plan for $25 / month which includes "Buyer Lead Generation" as one of its features[7]:




[7] Realty.com, "Realty.com Pro – Elevate Your Real Estate Business", available at: https://checkout.realty.com/.

41. Defendant also sells the real estate leads it generates through the Website *a la carte.* For example, it sells "Verified Seller Leads" for $85 per lead:




42. Defendant could not make money through the "two-sided" platform it operates on the Website without the contact information for potential home buyers and sellers that it obtains as "leads" and then sells to its paying subscribers and purchasers.

43. As a result, these "leads" are immensely valuable to Defendant.

## II. Defendant Uses Plaintiffs' and the Putative Class Members' Names and Identities to Advertise Its Products and Services and Obtain "Leads" to Sell to Its Paying Customers.

44. Defendant has created, published, and disseminated tens of thousands of profile pages, each of which uses a different real estate agent's name, identity, and personally identifying information to advertise its own products and services.

45. Defendant has neither requested nor obtained consent from the real estate agent whose names, identities, and other personal details it misappropriates on these profile pages prior to publishing and disseminating them.

46. Defendant disseminates these profile pages in California and intentionally directs them towards individuals located in California.

### A. Plaintiff Richard Medina's Profile Page

47. Plaintiff Richard Medina is a real estate agent in La Quinta, California.

48. The profile page created by Defendant regarding Plaintiff Richard Medina ("Plaintiff Medina's Profile Page")[8] is representative of the hundreds of thousands of similar such pages (including those corresponding to Plaintiff Edson[9] and all putative Class members) published by Defendant on the Website.

---

[8] *See* Realty.com, "Real Estate Agent – Richard Medina | Your Local Expert in Big River, CA," available at https://www.realty.com/real-estate-agents/3096189/richard_medina.

[9] Like all members of the putative Class, Plaintiff Edson has a profile page that is functionally identical to Plaintiff Medina's Profile Page, except that it displays her name, employer, personal details, and property listings. *See* Realty.com, "Real

49. Like the other profile pages created, published, and disseminated by Defendant, Plaintiff Medina's Profile Page uses his name, identity, and personally identifying information to advertise Defendant's products and services, and to thereby to collect leads which Defendant can sell to its paying customers.

50. Plaintiff Medina has never registered for Defendant's Website nor provided Defendant consent to use his name or identity in any manner, much less for the commercial purpose of advertising Defendant's products and services or collecting real estate leads for its own profit.

51. Plaintiff Medina's name and location are also featured in the title of the page, which is: "Real Estate Agent – Richard Medina | Your Local Expert in Big River, CA." This is a standard page title format, replicated across all real agent profile pages published by Defendant, with the only changes to the title between profile pages being the name of the real estate agent and his or her location.

52. An excerpt of Plaintiff Medina's Profile Page is reproduced in the screenshot below[10]:

---

Estate Agent – Jamie Edson| Your Local Expert in Nevada City, CA," available at https://www.realty.com/real-estate-agents/1920219/jamie_edson ("Plaintiff Edson's Profile Page").

[10] *See* Realty.com, "Real Estate Agent – Richard Medina | Your Local Expert in Big River, CA," available at https://www.realty.com/real-estate-agents/3096189/richard_medina.




53. As shown above, Plaintiff's Medina's Profile Page prominently displays his name and company. Plaintiff Medina's name is the most largest text on the page and is highlighted for emphasis.

54. As shown above, Plaintiff Medina's Profile Page contains a "button" stating "Claim your profile."

55. Further down, Plaintiff Medina's Profile Page displays certain information about him:




56. As shown above, Plaintiff Medina's profile page says "This profile has not yet been claimed or personalized. If you are Richard, you can claim and unlock this agent profile to showcase your experience, specialties, and contact details for prospective buyers and sellers."

57. As further shown above, Plaintiff Medina's profile page lists the areas where here purportedly specializes in selling homes, including various locations in California.

58. Further down the page, Defendant advertises a service from the first "side" of its two-sided business which purportedly connects the internet user to the

real estate agent who is the subject of the page. The following screenshot depicts this feature as it appears on Plaintiff Medina's Profile Page:




59. As shown, this part of Plaintiff Medina's Profile Page advertises Defendant's service which purportedly connects the internet user to the real estate agent who is the subject of the page. It repeatedly touts the benefits of this service, stating: "Hi! I'd love to get you all the info you need! Are you buying, selling, or both?" It then says:

- "No pressure, no obligation"
- "Get local expert market insights"
- "Get early access to new listings"

- "Explore all your options"
- "Make confident, informed decisions"

60. These promotional phrases are intended to induce potential home buyers or sellers to use Defendant's service by completing a questionnaire which appears when an internet user clicks "Buy", "Sell" or "Both."

61. The questionnaire concerns the internet user's interest in buying and/or selling properties and it requests their contact information.

62. For example, after an internet user clicks the "Buy" button on the page element pictured above, that element changes to reflect this appearance:



63. When an internet user clicks "Next", the element changes to reflect this appearance (with the first name of the person who input their data appearing where "John" appears below):




64. When an internet user inputs their city or state of interest on the page element pictured above, the element changes to reflect this appearance:




65. When an internet user selects a time on the page element pictured above, the element changes to reflect this appearance:




66. When an internet user inputs their email address and phone number and clicks "Submit" on the page element pictured above, the page element changes to reflect this appearance:



67. All of the forgoing screenshots were taken from Plaintiff Medina's Profile Page. They are representative of how this page element works on every unclaimed profile page published by Defendant (including Plaintiff Edson's Profile Page and the profile pages of every Class member).

68. Despite the profile pages stating "Thanks! I will reach out shortly; I look forward to meeting you [Name]" after a person submits their name, contact information, and geographic area of interest, the real estate agent whose name and identity are the focus of the profile page does not receive the lead.

69. Instead, the lead is sold by Defendant to its paying customers.

70. Once the lead is generated, Defendant sells provides he lead to a real estate agent who pays for it either as part of an *a la carte* purchase or a paid subscription plan.

71. Every profile page that has not been "claimed" by the real estate agent who is the subject of that page functions in this same way—including Plaintiff Medina's Profile Page, Plaintiff Edson's Profile Page, and the profile pages corresponding to every Class member.

72. Defendant's advertising for its own products and services and to obtain leads for its own commercial advantage on the profile pages does not stop with the page element pictured and discussed above.

73. Further down Plaintiff Medina's Profile Page (and on every unclaimed profile page, including Plaintiff Edson's Profile Page and the profile page of every Class member), there is a page element which advertises Defendant's service of providing sellers offers for their homes. It states "Instantly unlock your home value, equity, and risk-free cash offer for your home." This element contains a field where internet users can input their address, as shown below:




74. This page element is intended to induce internet users to sign up for Defendant's services in the hopes of receiving a "risk-free case offer" from someone to purchase their home.

75. When an internet user enters their home address in the page element pictured above, the following pop-up appears:




76. As shown above, this pop-up invites internet users to register for Defendant's services by creating an account (which requires entering their email address and phone number).

77. By clicking “Submit and Accept Terms” on the pop-up, the user is advised that they consent to “receive marketing communication about real estate brokerage services about properties you may will to buy or sell . . . .”

78. By clicking “Submit and Accept Terms”, internet users create an account with Defendant’s real estate membership service.

79. As explained above, Defendant benefits and gains an advantage from additional users of its real estate membership service because Defendant uses its registered users to generate leads which it sells to its paying customers.

80. Plaintiff Medina’s Profile Page is a singular publication which uses Plaintiff Medina’s name and identity for the purpose of advertising and promoting Defendant’s own products and services.

81. Defendant’s motive in publishing Plaintiff Medina’s Profile Page and all other profile pages is to use the respective real estate agents’ names and identities to attract users to its Website, display advertisements for its own products and services, obtain leads which it can sell to its paying customers, and thereby gain a commercial advantage and maximize its revenue and profits (as further shown in the section following below).

82. Defendant intentionally uses Plaintiff Medina’s, Plaintiff Edson’s, and hundreds of thousands of other real estate agents’ names and identities to advertise

its own products and services and obtain a commercial advantage in the manner alleged herein.

83. Defendant never requested or obtained consent from Plaintiff Medina, Plaintiff Edson, or any other member of the Class to use their names or identities to advertise its own products and services or obtain a commercial advantage.

### III. Defendant Uses Plaintiff Medina's, Plaintiff Edson's, and the Class Members' Names in Search Engine Optimization Techniques

84. Defendant further intentionally uses Plaintiff Medina's name, Plaintiff Edson's name, and the names of hundreds of thousands of other real estate agents in search engine optimization ("SEO") techniques built into the profile pages.

85. Defendant uses these names in SEO techniques in order to trade on the commercial value associated with the names. Defendant's goal is to attract internet users who are searching for these individuals by name to Defendants' advertisements for its own products and services on the profile pages.

86. Specifically, Defendant uses the names in this manner to ensure that the profile pages rank highly in search engine results whenever someone searches for the corresponding individual's name—and to thereby more effectively advertise Defendant's own products and services.

87. Defendant uses these names in following specific SEO techniques on each profile page:

- **Placing the real estate agent's name in the page's URL.** For example, Plaintiff Medina's name appears in the URL for Plaintiff Medina's Profile Page[11]:




- **Placing the real estate agent's name the page's title.** For example, Plaintiff Medina's name appears in the page title for Plaintiff Medina's Profile Page, which is entitled "Real Estate Agent – Richard Medina | Your Local Expert in Big River, CA"[12]:




This page title is reflected in the following line of Plaintiff Medina' Profile Page's html source code: <title>Real Estate Agent – Richard Medina | Your Local Expert in Big River, CA </title>

---

[11] Realty.com, "Real Estate Agent – Richard Medina | Your Local Expert in Big River, CA," available at https://www.realty.com/real-estate-agents/3096189/richard_medina.

[12] *Id.*

- **Placing the real estate agent's full name on the page multiple times.** For example, Plaintiff Medina's name appears on Plaintiff's Medina's Profile Page at least four separate times.
- **Placing multiple variants of the real estate agent's name on the page.** A website's use of common variants of a keyword phrase aids search engines in connecting different uses of that phrase to others (this is sometimes referred to as "keyword stemming" or "keyword phrase stemming").[13] For example, Plaintiff Medina's Profile Page uses two different various of his name: "Richard Medina" and "Richard Anthony Medina."
- **Placing the real estate agent's name in the page's headers.** For example, Plaintiff Medina's name appears in the first-level "header" on Plaintiff Medina's Profile Page.[14] This is reflected on the face of the page and in the following line of the page's source code: `<h1`

[13] *See* Topic Ranker Blog, *Yes, SEO Keywords Can Be Phrases (12 Best Examples)* (Oct. 17, 2024) ("Don't limit yourself to exact match keywords. Search engines have evolved to understand the intent behind queries, so optimizing for related phrases and synonyms can help you capture a wider range of relevant traffic."); *see also id*. ("Weave your target keyword phrases naturally into important on-page elements such as page titles, headings (H1, H2, etc.), body copy, and meta descriptions.")

[14] *See* Amelia Willson, Search Engine Journal, *How To Use Header Tags: SEO Best Practices* (May 31, 2024), available at https://www.searchenginejournal.com/on-page-seo/header-tags/.

```
class="font-bolder fs-large-5"><strong data-bellhop-id="name" style="background-image: url(&quot;https://www.realty.com/assets/img/agent/profile/agent-profile-9.png&quot;); background-repeat: no-repeat; background-position: left bottom; background-size: contain;"> Richard Medina</strong></h1>
```

- **Placing the real estate agent's name in the meta 'description' tag of the page's source code.** A 'description' meta tag is a piece of code placed on a website which structures search engines' understanding of the content on the page. Defendant's use of real estate agent' names in this technique ensures that search engines pick up the names when indexing pages and display the page in results generated in response to queries including the name.[15] The 'description' meta tag is reflected in the following line of the source code on Plaintiff Medina's Profile Page:

```
<meta name="description" content="Real Estate
```

[15] *See, e.g.*, Google Search Central, "Meta Tags and Attributes that Google Supports," available at https://developers.google.com/search/docs/crawling-indexing/special-tags (explaining "meta tags are HTML tags used to provide additional information about a page to search engines and other clients.") (also stating with respect to the 'description' meta tag: "Use this tag to provide a short description of the page. In some situations, this description is used in the snippet shown in search results.").

Agent profile of Richard Medina on Realty.com. Find your dream home or connect with Richard Medina for personalized real estate advice and local market insights in Big River, CA.">

- **Tagging images with the real estate agent's name using Alt text.** Alt text is a web development protocol which describes images for visually impaired users. Web developers can also enhance the search engine rankings of their pages by inserting keywords into the Alt text descriptions of images on websites.[16] Defendant tags placeholder images on each profile page with the corresponding real estate agent's name, work location, and practice area using Alt text. It does this even though the images on those unclaimed profile pages do *not* picture the individual whose name is contained in the Alt test (instead, the images appear to be blurry versions of Leonardo DaVinci's Mona Lisa painting). For example, one of the images of a house on Plaintiff Medina's Profile Page is described with the following Alt text: <img src="/imagecdn/shared_assets/default-

[16] Holly Cardew, *pixc*, "Mastering Alt Text Best Practices: Elevating SEO for Your Online Store" (July 1, 2024), available at https://pixc.com/blog/alt-text-best-practices/.

```
avatar.jpg?w=30" alt="Richard Medina headshot"
class="circle">
```

- **Placing the real estate agent's name in Schema.org descriptors.** Including the real estate agents' names in Schema.org descriptors embedded in the pages' source code ensures that search engines recognize the names as names, and are able to calibrate search engine results accordingly.[17] The Schema.org descriptors are reflected in the following line of the source code on Plaintiff Medina's Profile Page:

```
{"@context":"https://schema.org","@type":"RealEs
tateAgent","name":"Richard Medina"
```

88. Defendant's use of these SEO techniques reflects an intentional choice by Defendant to hold out Plaintiff Medina's name in search engines for the commercial purpose of trading on the value associated with his name.

89. Defendant's use of Plaintiff Medina's name in these many SEO techniques is designed to attract internet users who are searching for his name to the advertisements published by Defendant for its own products and services on Plaintiff Medina's Profile Page.

---

[17] *See* Schema.org, *Getting started with schema.org using Microdata*, available at https://schema.org/docs/gs.html. Schema.org descriptors are used solely for the purpose of improving the search engine optimization of a webpage.

90. Through each of these SEO techniques, Defendant intended to optimize the ranking of the profile pages in search engine results (e.g., in the results generated by a query on google.com) when any user searches for the name of any real estate agent for whom Defendant has built a profile page.

91. Defendant could have easily prevented the profile pages from appearing in search engine results by adding a "noindex" directive to the pages' source code.[18] Defendant chose not to.

92. During the time period relevant to this action, numerous non-subscribers to Defendant's services performed searches on Google and other search engines that yielded results including hyperlinks to Plaintiff Medina's Profile Page and Plaintiff Edson's Profile Page, along with summaries of the information available on the profile page in the search-engine results themselves (including Plaintiffs' names and other personally identifying information).

93. During the time period relevant to this action, numerous non-subscribers to Defendant's services visited Plaintiff Medina's Profile Page and Plaintiff Edson's Profile Page by clicking on a link to such page in the results page of a search performed on Google or another search engine.

---

[18] A "noindex" directive is a piece of code on the page that instructs search engines not to index the page. *See* Google Search Central, *Block Search indexing with noindex*, available at https://developers.google.com/search/docs/crawling-indexing/block-indexing.

94. During the time period relevant to this action, numerous non-subscribers to Defendant's services bore witness to the Defendant's use of Plaintiff Medina's name on Plaintiff Medina's Profile Page and Plaintiff Edson's name on Plaintiff Edson's Profile Page to advertise Defendants' products and services and gain a commercial advantage.

95. Defendant tracks, *inter alia*, the number of times when (by date and time) and from where (by, *inter alia*, IP address) each of each profile pages is viewed by a non-subscriber, the location from which the visitor to the page originated (such as a Google search results page), and the total numbers of persons who have visited a particular profile page.

96. Defendant continues to improve the coding of the profile pages to maximize their visibility to the consuming public in the results yielded by searches on Google and other popular search engines, and employ persons (and work with contractors) who focus specifically on these efforts.

## CLASS ACTION ALLEGATIONS

97. Plaintiff Medina's Profile Page is representative of the tens of thousands of unclaimed profile pages disseminated by Defendant in California and corresponding to real estate agents residing in California, including those corresponding to the identities of Plaintiff Edson and all members of the Class.

98. Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiffs bring this action, on behalf of himself and members of the "Class" defined as follows:

> All natural persons residing in the state of California for whom Defendant established a profile page on Realty.com and who have not created an account on Realty.com.

99. Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

100. Plaintiffs reserve the right to modify the definitions of the Class, including based on discovery and further investigation.

101. The members of the Class are so numerous that their individual joinder herein is impracticable. Plaintiffs are informed and believe, and thereupon allege, that the members of the Class number in the tens of thousands or higher. The precise number of members of the Class and their identities are unknown to Plaintiffs at this time but will be readily determined in discovery, including by reference to Defendant's records. Members of the Class may be notified of the pendency of this action by email, mail and/or publication through the records of Defendant.

102. Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent in that Plaintiffs and all members of the Class were injured and sustained damages by Defendant's uniform wrongful conduct—namely, Defendant's practices of using Plaintiffs' and the Class members' names, identities, and personally identifying information to advertise, sell, and promote, and to solicit sales of its products and services, without any of their consent.

103. Common questions of law and fact exist as to all members of each of the Class and predominate over questions affecting only individual members. Legal and factual questions common to the Class include, but are not limited to:

a. Whether Defendant engaged in the alleged conduct;

b. Whether Defendant knowingly used the names and personally identifying information of the members of the Class;

c. Whether Defendant used the Class members' names, identities, and other personally identifying information for the purposes of advertising goods or services;

d. Whether Defendant had the Class members' consent to use their names and personally identifying information in this way;

e. Whether members of the Class are entitled to recover statutory damages;

f. Whether members of the Class are entitled to equitable relief, including injunctive relief.

104. Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the other members of the Class they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

105. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues

will ensure that all claims and claimants are before this Court for consistent adjudication of such issues.

**FIRST CLAIM FOR RELIEF**
**Violation of the California Right of Publicity Law, Cal. Civ. Code § 3344(a)**
**(By Plaintiffs Medina and Edson, Individually and On Behalf of the Class)**

106. Plaintiffs Medina and Edson, individually and on behalf of the Class, repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

107. Defendant is a corporation and thus a juristic "person" within the meaning of the CRPL. *See* Cal. Civ. Code § 3344(a)(1).

108. During the time period relevant to this action, Defendant publicly used the name and other personally identifying attributes of Plaintiffs and the Class members in the manner alleged herein, including by using such names, identities, and other personally identifying information on profile pages to advertise Defendant's own products and services (including its real estate membership service, its service to connect internet users with a real estate agent, and its service to obtain a purchase offer on a home), and to generate real estate leads to sell to its paying customers.

109. Defendant's use of Plaintiffs' and the Class members' names, identities, and personally identifying information on the profile pages and in SEO techniques on those pages constitutes a "use" "for purposes of "advertising"

"products, merchandise, goods, or services" within the meaning of the CRPL. *See* Cal. Civ. Code § 3344(a)(1).

110. Defendant's real estate membership service, service to connect internet users with a real estate agent, and service to obtain a purchase offer on a home constitute "products, merchandise, goods, or services" within the meaning of the CRPL. *See id*.

111. The real estate leads Defendant acquires through the profile pages constitute "products, merchandise, goods, or services" within the meaning of the CRPL. *See id*.

112. Defendant has published and disseminated the profile pages in California.

113. Prior to using and holding out Plaintiffs' and the Class members' names and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiffs nor any member of the Class that it would do so, and neither Plaintiffs nor any member of the Class has ever consented (in writing or otherwise) to Defendant doing so.

114. By using Plaintiffs' and the Class members' names, identities, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiffs' and the Class members' rights of publicity in violation of the CRPL.

115. Plaintiffs suffered mental anguish as a result of Defendant's unauthorized uses of their names, identities, and other personally identifying information in the manner alleged herein. Upon learning that their names, identities, and other personal details were being used by Defendant to gain a commercial advantage and to advertise its products and services on the open market for its own financial gain without their consent, Plaintiffs became worried, frustrated, and concerned about their ability to control the use of their identities, disturbing their peace of mind in a meaningful way—just as would occur to any reasonable person (including members of the Class) under the same or similar circumstances. Plaintiffs' loss of control of their names and identities for commercial purposes is highly distressing to them and causes them concern about how Defendant currently uses, has used in the past, and may use their names and identities to advertise its services in the future.

116. Significant commercial value exists in the aspects of Plaintiffs' and the other Class members' names and identities that Defendant used and continues to use in the manner alleged herein.

117. Defendant's use of Plaintiffs' and the Class members' names, identities, and other personally identifying information in profile pages was not incidental. On the contrary, it was instrumental (and continues to be instrumental) to Defendant in generating new leads for its customers and obtaining users of its

platform. This is demonstrated by the sheer volume of profile pages published by Defendant on the Website.

118. Defendant does not use Plaintiffs' nor the Class members' names to identify or describe Defendant's own products or services. Neither Plaintiff nor any member of the Class has ever registered for Defendant's Website, meaning that they are not a part of Defendant's real estate agent network and do not receive the leads that Defendant generates through their profile pages. Nor is any information about Plaintiff nor any member of the Class available for sale on Defendant's website.

119. On behalf of themselves and the Class, Plaintiffs seek: (1) an injunction requiring Defendant to obtain prior consent from the Class members prior to the use of their names and identities to advertise products or services; (2) $750.00 in statutory liquidated damages to Plaintiffs and each Class member; and (3) costs and reasonable attorneys' fees. *See* Cal. Civ. Code § 3344(a)(1).

## SECOND CLAIM FOR RELIEF
**Violation of California's Common Law Right of Publicity**
**(By Plaintiffs Medina and Edson, Individually and On Behalf of the Class)**

120. Plaintiffs Medina and Edson, individually and on behalf of the Class, repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

121. Defendant used Plaintiffs' and the Class member's names, identities, and other personally identifying details on profile pages advertising and promoting Defendant's own products and services.

122. Defendant appropriated Plaintiffs' and the Class member's names, identities, and other personally identifying details on those profile pages to its own commercial advantage by using them to advertise its own products and services (including its real estate membership service, its service to connect internet users with a real estate agent, and its service to obtain a purchase offer on a home), and to generate real estate leads to sell to its paying customers.

123. Prior to using and appropriating Plaintiffs' and the Class members' names, identities, and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiffs nor any member of the Class that it would do so, and neither Plaintiffs nor any member of the Class ever consented (in writing or otherwise) to Defendant doing so.

124. Defendant's use and appropriation of Plaintiffs' and the Class members' names and identities on the profile pages without their consent to advertise Defendant's own products and services injured Plaintiffs and the Class members by depriving them of the commercial value associated with the use of their names and identities for advertising purposes.

125. Defendant's use and appropriation of Plaintiffs' and the Class members' names and identities on the profile pages without their consent to advertise Defendant's own products and services further injured Plaintiffs and the Class members by causing them mental anguish, including worry, frustration, and concern in a meaningful way.

126. Defendant has published and disseminated the profile pages in California.

127. By using Plaintiffs' and the Class members' names, identities, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiffs' and the Class members' California common law rights of publicity.

128. Significant commercial value exists in the aspects of Plaintiffs' and the other Class members' names and identities that Defendant used and continues to use in the manner alleged herein.

129. Defendant's use of Plaintiffs' and the Class members' names, identities, and other personally identifying information in profile pages was not incidental. On the contrary, it was instrumental (and continues to be instrumental) to Defendant in generating new leads for its customers and obtaining users of its platform. This is demonstrated by the sheer volume of profile pages published by Defendant on the Website.

130. Defendant does not use Plaintiffs' nor the Class members' names to identify or describe Defendant's own products or services. Neither Plaintiffs nor any member of the Class has ever registered for Defendant's Website, meaning that they are not a part of Defendant's real estate network and do not receive the leads generated through their profile pages. Nor is any information about Plaintiffs nor any member of the Class available for sale on Defendant's website.

131. On behalf of themselves and the Class, Plaintiffs seek an injunction requiring Defendant to obtain prior consent from the Class members prior to the use of their names and identities to advertise products or services.

## THIRD CLAIM FOR RELIEF

**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. §§ 17200**
**(By Plaintiffs Medina and Edson, Individually and On Behalf of the Class)**

132. Plaintiffs Medina and Edson, individually and on behalf of the Class, repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

133. California Business and Professions Code section 17200 et seq. ("UCL") prohibits "unlawful, unfair, or fraudulent business acts or practices."

134. By selling misappropriating Plaintiffs' and the Class members' names and identities without consent, as described above, Defendant has engaged in unlawful and unfair acts and practices prohibited by the UCL.

135. Defendant's conduct is unlawful under the UCL because it violates California's common-law and statutory right of publicity, as discussed in the first and second causes of action.

136. Defendant knowingly used and continues to use the names, identities, and other identifying information of the class members for the purpose of advertising its products and services and gaining a commercial advantage.

137. Defendant's misappropriation of Plaintiffs' and the Class members' names, identities, and other identifying information was to the company's economic and commercial advantage.

138. Defendant has generated millions of dollars of revenue from subscriptions to its products, which would be worthless without the leads it generates through the Website. Defendant attracts these users by advertising on the profile pages which use the Plaintiffs' and the Class members' names, identities, and personally identifying information.

139. At no time has Defendant affirmatively sought consent from Plaintiffs or the Class members before misappropriating their names, identities, and personally identifying information for commercial purposes.

140. Neither Plaintiffs nor the Class members received any compensation for Defendant's commercial use of their names, identities, and other personal identifying information.

141. Defendant's conduct also constitutes unfair business practices under the UCL because these practices offend established public policy and cause harm to Plaintiffs and the Class members, which cannot be reasonably avoided, and that outweighs any benefit to consumers or competition. The conduct also is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

142. Plaintiffs and the Class members have suffered economic injury as a result of Defendant's unlawful and unfair business practices. But for its violation of law, Defendant would have either paid Plaintiffs and the Class members for consent to use their names, identities, and other personally identifying information, or ceased its commercial use of those attributes. Plaintiffs and the Class members have been denied compensation due to them for Defendant's commercial use of their names and identities.

143. As a result of its unlawful and unfair business practices Defendant has reaped and continues to reap unfair and illegal profits at the expense of the plaintiffs and class members. Thus, Defendant should be required to disgorge its illegal profits, and to pay the plaintiffs and class members restitution in an amount according to proof at the time of trial.

144. Plaintiffs' and the Class members' names, identities, and other personally identifying information is likely to remain in use by Defendant for the commercial purposes of advertising its own products and services, obtaining real

estate leads, and gaining a commercial advantage without an injunction to prohibit that unlawful conduct.

## FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(By Plaintiff Medina and Edson, Individually and On Behalf of the Class)**

145. Plaintiffs Medina and Edson repeat and incorporate by reference each preceding paragraph as if fully stated herein.

146. Defendant has wrongfully and unlawfully used Plaintiffs' and the Class members' names, identities, and other personal identifying information for the commercial purpose of advertising its own products and services without their consent for substantial profits.

147. Plaintiffs' and the Class members' names, identities, and personal information have conferred an economic benefit on Defendant.

148. Defendant has been unjustly enriched at the expense of Plaintiffs and the Class members, and the company has unjustly retained the benefits of its unlawful and wrongful conduct.

149. It would be inequitable and unjust for Defendant to be permitted to retain any of the unlawful proceeds resulting from its unlawful and wrongful conduct.

150. Plaintiffs and the Class members accordingly are entitled to equitable relief including restitution and disgorgement of all revenues, earnings, and profits that Defendant obtained as a result of its unlawful and wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek a judgment against Defendant, individually and on behalf of the members of the Class, as follows:

A. For an order certifying the Class pursuant to Federal Rule of Civil Procedure 23 and naming Plaintiffs Medina and Edson as representatives of the Class and Plaintiffs' undersigned attorneys as counsel to represent the Class;

B. For an order entering judgment in favor of Plaintiffs and the members of the Class on all claims for relief stated herein;

C. For an order awarding Plaintiffs and the members of the Class actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in the amounts set by statute or to be proven at trial;

D. For an order for appropriate injunctive relief;

E. For an order awarding pre- and post-judgment interest according to law; and

F. For an award of attorneys' fees, costs and expenses to Plaintiffs' counsel.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and members of the Class, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims and issues so triable.

Dated: September 10, 2026

Respectfully submitted,

By: /s/ *Frank S. Hedin*

**HEDIN LLP**

Frank S. Hedin (SBN 291289)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
E-Mail: fhedin@hedinllp.com

Tyler K. Somes*
District of Columbia Bar No. 90013925
HEDIN LLP
1100 15th Street NW, Ste 04-105K
Washington, D.C. 20005
Telephone: (202) 900-3332
Facsimile: (305) 200-8801
tsomes@hedinllp.com

*Counsel for Plaintiff and the Putative Class*

**Pro hac vice application forthcoming*